# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH BARONE,<br><br>                            **Plaintiff,**<br><br>v.<br><br>PUBLIC SERVICE ELECTRIC AND GAS COMPANY; PUBLIC SERVICE ENTERPRISE GROUP, INC.; and JOHN AND JANE DOES (1-10),<br><br>                          **Defendants.** | No. 18-cv-16569-KM-JBC<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court on motions of both parties. Defendants Public Service Electric and Gas Company, and Public Service Enterprise Group, Inc. (collectively, "PSE&G") removed this action from the Superior Court of New Jersey, Essex County, on the basis that seven counts of Barone's nine-count complaint are preempted by § 301 of the Labor-Management Relations Act ("LMRA"). PSE&G then filed a motion for partial dismissal of the original complaint based on preemption under §301 and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (DE 9). Plaintiff Joseph Barone responded by moving to amend his complaint under Federal Rule of Civil Procedure 15(a)(2) to remove all federal questions, and to remand the case to state court. (DE 15).

For the reasons provided below, Barone's motion to amend the complaint and to remand this action to the Superior Court of New Jersey, Essex County is granted. (DE 15). PSE&G's motion to dismiss the original complaint is terminated as moot. (DE 9).

1

## I. Background[1]

Barone worked for PSE&G as a substation operator from 2004 until his termination on October 25, 2016. (AC ¶¶8, 69, 66). At the time of his employment, Barone was a member of Local Union 94 of the International Brotherhood of Electric Engineers ("Local 94"). (DE 9-2, ¶2 (Certification of Joan Wentura)). Local 94 had a collective bargaining agreement with PSE&G that was effective May 1, 2013 through April 30, 2017. (*Id.* at ¶3).

Barone suffered a work-related injury on November 30, 2013, when he turned a breaker control handle to restore power to customers in a particular area. (AC ¶¶14-23). He immediately went out on medical leave, and never returned to work. (AC ¶¶23, 65-69). After he went out on leave, Barone filed a workers' compensation claim on June 5, 2014, and underwent three separate spinal surgeries for injuries related to his workplace accident. (AC ¶¶24-47).

In or around September of 2016, another PSE&G employee, Richard Archer "made slanderous statements and spread false rumors about Barone to other PSE&G employees, including supervisors." (AC ¶¶48-49). Archer made comments "the Barone had domestic disputes with his mother and wife, that

---

[1] As required at this stage, the Court accepts all well-pleaded factual allegations in the complaint as true. For ease of reference, the following abbreviations will be used in this Opinion:

"DE" = docket entry number in this matter;
"PBr" = Barone's brief in support of motion to amend and remand (DE 15);
"DBr" = PSE&G's brief in opposition to plaintiff's motion (DE 16);
"Reply" = Barone's reply brief (DE 17); and
"DDBr" = PSE&G's brief in support of motion to dismiss (DE 9).

PSE&G's motion to dismiss was initially stayed, pending resolution of Barone's motion to amend and remand. (DE 12). As a result, that motion has not been fully briefed. However, the preemption basis of the motion to dismiss raises the same arguments that are raised in PSE&G's opposition brief to Barone's motion to amend.

This opinion will rely on the facts as alleged in the amended complaint ("AC"), which have remained unchanged from the original complaint. (DE 17-1). The amended complaint removes the sixth count (wrongful discharge in violation of company policies), the seventh count (breach of an express and implied contract), and the eighth count (breach of the covenant of good faith and fair dealing). (AC ¶¶113-132).

2

he had been arrested, and that he had a criminal history." (AC ¶51). Upon learning about Archer's statements, Barone filed an internal complaint with PSE&G on September 22, 2016. (AC ¶¶52-54). PSE&G determined that Barone's complaint was unsubstantiated. (AC ¶61).

On October 20, 2016, three years after Barone's initial accident, Barone's doctor cleared him to return to work, with certain limitations. (AC ¶¶65, 67, 70). Barone, however, was unable to work in his previous position. (AC ¶66). Five days later, PSE&G terminated Barone's employment, claiming that there were no other positions available for which Barone was qualified with his medical restrictions. (AC ¶69). Barone's doctor, thereafter, requested an extension of his medical leave, which PSE&G refused. (AC ¶¶71-74).

On October 25, 2018, Barone filed a nine-count complaint in the Superior Court of New Jersey, Essex County. (DE 1-1). The first four counts of the complaint alleged violations of the New Jersey Law Against Discrimination ("NJLAD").[2] (AC ¶¶75-104). The complaint also alleged wrongful discharge in violation of public policy (fifth count); wrongful discharge in violation of company policies (sixth count); breach of an express and implied employment contract (seventh count); breach of the covenant of good faith and fair dealing (eighth count); and tortious interference with express and implied employment contract (ninth count). (AC ¶¶ 105-138).

On November 29, 2018, PSE&G removed the case to this Court, contending that the CBA governs the parties' relationship and that Barone's contract claims for breach of an express and implied employment contract (seventh count) and breach of the covenant of good faith and fair dealing (eight count) were preempted under the LMRA. (DE 1, ¶9). PSE&G also asserted that

---

[2] Specifically, the first count alleges disability discrimination and failure to accommodate based on Barone's request to return to work. (AC ¶¶75-82). The second count alleges disability discrimination and failure to accommodate based on PSE&G's denial of Barone's request for an extension of medical leave. (AC ¶¶83-90). The third count alleges retaliation for reporting Archer's comments. (AC ¶¶91-98). The fourth count asserts individual liability. (AC ¶¶99-104).

3

"the other claims . . . plainly implicate the terms and conditions of Plaintiff's employment, which are matters addressed in the CBA." (DE 1, ¶10).

On December 20, 2018, PSE&G filed a motion for partial dismissal of the complaint based on §301 preemption and Rule 12(b)(6). Thereafter, Barone requested a stay of PSE&G's motion to dismiss and indicated that he intended to file a motion to amend the complaint to remove the preempted claims. (DE 12).

On January 22, 2019, Barone filed a motion to amend the complaint and to remand this action to state court. (DE 15). Barone removed the sixth (wrongful discharge in violation of company policies), seventh (breach of express and implied employment contract), and eighth (breach of the covenant of good faith and fair dealing) counts from the complaint. The rest of the state law claims, he says, are not preempted. Barone argues that remand is appropriate because removal of these three claims from the complaint deprives the Court of subject matter jurisdiction. PSE&G has opposed Barone's motion. (DE 16).

## II. Motion to Amend the Complaint

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." The Third Circuit has adopted a liberal approach in applying Rule 15 to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990).

"Leave to amend is to be freely granted unless there is a reason for denial, 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Concepcion v. CFG Health Sys. LLC*, 2013 U.S. Dist. LEXIS 159134, at *3-4 (D.N.J. Nov. 6, 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222, (1962)); *see also*

4

*Arthur v. Maersk*, 434 F.3d 196, 204 (3d. Cir. 2006) ("Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility.").

"The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Where no prejudice to defendants has been demonstrated, the Court should exercise its discretion to grant the motion to amend the complaint. *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (holding that prejudice to non-moving party is the "touchstone for the denial of the amendment."). "The burden is generally on the party opposing the amendment to demonstrate why the amendment should not be permitted." *Luppino v. Mercedes-Benz USA, LLC*, 2012 WL 850743, at *2 (D.N.J. Mar. 8, 2012).

"'Prejudice,' for purposes of determining whether to allow the proposed amendments, involves serious impairment of the non-movant's ability to present its case." *Dente v. Saxon Mortg.*, 2012 U.S. Dist. LEXIS 66588, at *6 (D.N.J. May 11, 2012) (citation omitted) ("Incidental prejudice to the non-moving party is not a sufficient basis for denial of an amendment; prejudice becomes 'undue' only when the non-moving party shows that it would be unfairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered."); *see also McRobie v. Credit Prot. Ass'n*, 2018 U.S. Dist. LEXIS 185419, at *5 (E.D. Pa. Oct. 29, 2018) ("Specifically, courts consider whether the amendment would force the opponent to expend significant additional resources to conduct discovery and prepare for trial, as well as whether it would significantly delay resolution of the action." (citation omitted)).

PSE&G has not argued or otherwise suggested that the proposed amendments would impair its ability to present its case or that it will be foreclosed from advancing certain arguments as a result of permitting the

proposed amendment. Notably, at no point has PSE&G argued that it will be prejudiced by the filing of the Amended Complaint. Moreover, this case is at the earliest stages. The parties have not yet had a Rule 16 conference or engaged in any discovery.

This Circuit has adopted a liberal approach in granting motions to amend. Barone's motion to amend the complaint is therefore granted. (DE 15).

### III. Motion to Remand

PSE&G argues that Barone's claims are preempted because they are "inextricable intertwined" with the terms of the CBA. PSE&G principally contends that Barone was legitimately terminated because the CBA provides that Barone was entitled to "no more than three weeks of vacation . . . and 11 weeks of unpaid leave." (DBr at 3). PSE&G argues that Barone exceeded his allotted leave time "by more than a factor of 10" and therefore, was properly terminated. *Id.*

#### A. Removal and preemption principles

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (concerning federal question jurisdiction).

A party's right to remove a civil action is "determined according to the plaintiff's pleading at the time of the petition for the removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S. Ct. 347, 83 L. Ed. 334 (1939). "[A] subsequent amendment to the complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction." *Seawright v. Greenberg*, 233 Fed. App'x 145, 148 (3d Cir. 2007).

A removed action must be remanded, however, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014) (internal quotation marks and

6

citation omitted). Removal is "strictly construed, with all doubts to be resolved in favor of remand." *Brown v. JEVIC*, 575 F.3d 322, 326 (3d Cir. 2009) (citations omitted); *see also Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985) ("[T]he removal statute should be strictly construed and all doubts should be resolved in favor of remand" because "lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile.").

Under the "well-pleaded complaint" rule, a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not allege a federal claim on its face. *Dukes v. U.S. Healthcare*, 57 F.3d 350, 353 (3d Cir. 1995) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983) ("[A] defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law."), *superseded by statute*, 28 U.S.C. § 1441); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). A party bringing a claim is "the master of the claim," and as the master of the claim, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392.

Barone's complaint does not allege or specify any federal cause of action. When a complaint asserts only state law causes of action, the mere possibility that issues of federal law may be involved will not alone suffice to create federal subject-matter jurisdiction. *See Franchise Tax Bd.*, 463 U.S. 1, 9-12.

Complete preemption, however, is an exception to the well-pleaded complaint rule. "Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character. For 20 years, this Court has singled out claims pre-empted by § 301 of LMRA for such special treatment." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58,

63-64 (1987); see *Caterpillar Inc.*, 482 U.S. at 393 ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." (citations and quotation marks omitted)).

Section 301 of the LMRA provides federal courts with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185. The Supreme Court has held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Thus, § 301 preemption arises when "resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 406 (1988).

That said, the LMRA does not preempt "every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement." *Lueck*, 471 U.S. at 211. "[A] state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." *Rutledge v. Int'l Longshoremen's Ass'n AFL-CIO*, 701 F. App'x 156, 161 (3d Cir. 2017) (internal quotations and citation omitted).

The LMRA, therefore, does not "preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract" or "where the state law claim can be resolved without substantially interpreting the collective bargaining agreement itself." *Lueck*, 471 U.S. at 212, 220. "Only state law claims 'inextricably intertwined with considerations of the terms of the labor contract' are preempted by [LMRA]." *Carrington v. RCA Global*

8

*Commc'n, Inc.*, 762 F. Supp. 632, 640 (D.N.J. 1991) (quoting *Malia v. RCA Corp.*, 794 F.2d 909, 912 (3d Cir. 1986)).

### B. NJLAD claims

I first address the NJLAD claims, the first four counts of the amended complaint. Resolution of these counts will turn on questions of fact that pertain "to the conduct of the employee and the conduct and motivation of the employer." *Lingle*, 486 U.S. at 407. The right to be free of discrimination is independent of an employee's rights under a CBA. Courts have therefore consistently held that claims under the NJLAD are separate and independent of the terms contained in a labor contract. *See Rutledge*, 701 F. App'x at 162 (holding that plaintiff's NJLAD claim not preempted); *LaResca v. AT&T*, 161 F. Supp. 2d 323, 326, 330 (D.N.J. 2001) (holding that plaintiffs' claims for disability discrimination and failure to accommodate under the NJLAD were not preempted even though defendant contended that granting requested accommodation would have violated CBA by infringing on the rights of more senior employees); *Mitchell v. Village Super Market, Inc.*, 926 F. Supp. 476, 479-81 (D.N.J. 1996) ("The right not to be discriminated against is defined and enforced under state law without reference to the terms of any collective bargaining agreement even where the labor contract itself prohibits discrimination." (internal quotations omitted)); *Kube v. New Penn Motor Express, Inc.*, 865 F. Supp. 221, 228-30 (D.N.J. 1994) (holding that LMRA did not preempt handicap or retaliatory discharge claims brought under NJLAD); *Carrington*, 762 F. Supp. at 639-42 ("both the existence and the scope of plaintiff's state law discrimination claims under NJLAD are derived independently from state law, and not from the obligations assumed by the parties under the labor agreement."); *see also Bull v. UPS*, 2014 U.S. Dist. LEXIS 89077, at *42 (D.N.J. July 1, 2014) ("UPS cites the CBA to bolster its case and justify its actions. That is perfectly permissible, but it does not transform this case into one about, or arising from, the CBA."); *Sharkey v. Verizon N.J. Inc.*, 2014 U.S. Dist. LEXIS 164158, at *19-20 (D.N.J. Nov. 21,

9

2014) ("[T]he resolution of Plaintiff's failure to accommodate and disparate treatment claims will not involve analysis or interpretation of the collective bargaining agreement.").

The NJLAD claims are therefore not preempted, even if PSE&G relies on the CBA in defending its actions. *See LaResca*, 161 F. Supp. 2d at 330-31 (holding that NJLAD claims are not preempted even though defendant "may refer to the CBA in defending its action" and "to justify its conduct."). There is a difference between "interpreting" the CBA and referring to it as part of a defense:

> Reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms. If it were, all discrimination actions brought by unionized employees would be preempted because the starting point for every case would have to be the agreement. Although the line between reference to and interpretation of an agreement may be somewhat hazy, merely referring to an agreement does not threaten the goal that prompted preemption -- the desire for uniform interpretation of labor contract terms.

*Id.* (quoting *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 749 (9th Cir. 1993)).

I agree with the decisions from these courts and conclude that Barone's NJLAD claims are not preempted, even though PSE&G suggests that it legitimately terminated Barone after he exceeded his allotted leave time under the CBA. *Cf. LaResca*, 161 F. Supp. 2d at 326, 329-30. To establish a claim for disability discrimination under the NJLAD, a plaintiff must first present the prima facie elements, "that is: (1) plaintiff was disabled within the meaning of the statute; (2) plaintiff was qualified to perform the essential functions of the position of employment [with or without accommodation]; and (3) plaintiff suffered an adverse employment action because of the disability." *Sharkey*, 2014 U.S. Dist. LEXIS 164158, at *18-19 (citation omitted). For a reasonable accommodation claim, a plaintiff must demonstrate: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to

10

assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* (citation omitted).

The resolution of these elements does not involve analysis or interpretation of the CBA between PSE&G and Barone's union. This is a state-law NJLAD case based on "rules that proscribe conduct" and on "establish[ed] rights and obligations, independent of a labor contract." *Lueck*, 471 U.S. at 211-212. Whether Barone was reasonably accommodated or terminated are factual issues as to which the CBA is relevant, but not determinative. Indeed, if the mere possibility that the Court might need to refer to the terms of a CBA gave rise to federal jurisdiction over a plaintiff's NJLAD claims, then "all discrimination actions brought by unionized employees would be preempted because the starting point for every case would have to be the [CBA]." *Coefield v. Jersey Cent. Power & Light Co.*, 532 F. Supp. 2d 685, 697 n.8 (D.N.J. 2007). Accordingly, I conclude that the first four counts of the complaint are not preempted.

### C. Wrongful discharge

Next, the complaint alleges a common law claim for wrongful discharge under *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980) (fifth count). "[A]n employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Id.* at 72. "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Id.*

Barone claims that he was terminated because he requested a reasonable accommodation, a right established under New Jersey law, and reported Archer's statements, which Barone believed to be illegal. Barone does not claim that these actions were in violation of the CBA. Therefore, the *Pierce* claim does not require the Court to interpret the CBA. *See Dickerson v. Palisades Med. Ctr., Inc.*, 2013 U.S. Dist. LEXIS 147473, at *8 (D.N.J. Sep. 24, 2013) (holding that *Pierce* claim not preempted under § 301), *R&R adopted by*,

11

2013 U.S. Dist. LEXIS 147120 (D.N.J. Oct. 9, 2013); *cf. Hawaiian Airlines v. Norris*, 512 U.S. 246, 266 (1994) (holding that "respondent's claims for discharge in violation of public policy . . . [is] not pre-empted.").

### D. Tortious Interference

The ninth count of the complaint alleges tortious interference with an express and implied employment contract. (AC¶¶133-138). The Supreme Court has held that a "plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 396 ("individual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law . . . a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement").

Barone's claim for tortious interference with an employment contract presents questions of fact pertaining to an alleged individual employment contract between Barone and PSE&G, which is separate and apart from the CBA.[3] Thus, this claim is not preempted. *See Caterpillar*, 482 U.S. at 396.[4]

---

[3] The Court recognizes that PSE&G claims that the CBA is the only contract that exists between Barone and PSE&G. However, the complaint alleges the existence of an employment contract, which may exist even if it is not written. To hold that the CBA is the only agreement between the parties as this juncture is to prematurely decide the merits of this claim. Barone disclaims reliance on the CBA as the relevant contract; if there turns out to be no other, as PSE&G states, then the claim should fail.

[4] *Rutledge*, relied upon by PSE&G, is distinguishable. 701 F. App'x at 163 (holding that plaintiff's claim that defendants "tortiously interfered with a prospective economic advantage that [plaintiff] expected to receive by denying his reinstatement as a longshoreman" was preempted under §301 because resolution of "claim requires interpretation of the CBA because it is impossible to determine whether Rutledge had a reasonable expectation of future employment as a longshoreman without looking to the CBA provisions that govern the process for reinstating his eligibility for that work."). Unlike *Rutledge*, Barone's claim arises from a separate employment agreement. He claims that PSE&G tortiously interfered with that agreement by

12

### E. Supplemental jurisdiction

Pursuant to the analysis above, I have dismissed all arguably preempted claims, *i.e.,* all claims alleged to be federal. Under 28 U.S.C. § 1367(c), the Court has discretion to decline jurisdiction over remaining claims after all federal claims have been dismissed from the action. The Third Circuit has held that where the federal claims that gave the basis for original jurisdiction are dismissed, a "district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)); *see Shaffer v. Bd. of Sch. Dirs. of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (holding that "pendent jurisdiction should be declined where the federal claims are no longer viable, absent extraordinary circumstances").

I decline to exercise my jurisdiction over the state-law claims. This action is in its earliest stages; the federal claims, particularly post-amendment, were insubstantial; and judicial economy and convenience do not weigh in favor of retaining jurisdiction over state-law claims.[5]

---

denying his accommodation requests and ultimately terminating him. Therefore, resolution of this claim turns on the terms and conditions of that agreement, not the CBA.

[5] Barone's amended complaint removed the sixth count (wrongful discharge in violation of the policies contained in PSE&G's Handbook); seventh count (breach of express and implied employment contract) and breach of the covenant of good faith and fair dealing (eighth count). The sixth count relies on interpretation of an obligation created by PSE&G's Handbook, not the CBA. Similarly, the seventh count would rely upon a separate employment agreement, not the CBA. *See Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 231 (3d Cir. 1995) (holding that claim under individual employment contract not preempted); *Dent v. Cingular Wireless, Ltd. Liab. Co.*, 2007 U.S. Dist. LEXIS 44612, at *18 (D.N.J. June 20, 2007) (holding that claim for breach of individual employment contract not preempted). It is not clear whether the eighth count relies upon the CBA, or one of the other agreements identified in the complaint. Because that count has been dropped from the amended complaint, I do not resolve this issue.

## IV. Conclusion

For the reasons stated above, Barone's motion to amend the complaint and to remand this action to the Superior Court of New Jersey, Essex County, is granted. (DE 15). PSE&G's motion to dismiss the complaint is otherwise terminated as moot. (DE 9).

Dated: July 22, 2019

_____
**Kevin McNulty**
**United States District Judge**